522 P.2d 44

**The STATE of Arizona, Appellant,**

v.

**Bonnie Irene RADABAUGH and Laurie Margaret Osborn, Appellees.**

**No. 2 CA–CR 364.**

Court of Appeals of Arizona, Division 2.

May 16, 1974.

Gary K. Nelson, Atty. Gen., Phoenix, Dennis De Concini, Pima County Atty., by Carmine A. Brogna, Deputy County Atty., Tucson, for appellant.

Robert A. Hershey, Tucson, for appellee Radabaugh.

Michael J. Vingelli, Tucson, for appellee Osborn.

OPINION

KRUCKER, Judge.

The sole issue of this appeal is whether or not the trial court erred in granting defendants' motion to suppress. The motion was granted on the grounds that there was "lack of probable cause."

---

On July 12, 1973, at approximately 2:35 p. m., Detectives Gomez and Lowe of the burglary detail of the Tucson Police Department were in the area of Tenth Avenue and University Boulevard. They observed an older model Ford stationwagon [1] traveling north on Perry near Second Street. In the front seat of the vehicle were two white females, one driving and the other sitting in the passenger side. In the rear seat was a black male, who was sitting next to a large object later identified as a chandelier.

Detectives Gomez and Lowe, who were in an unmarked car, proceeded to follow the stationwagon. According to their testimony, they followed it because the area (1) was a predominately black neighborhood, (2) was often used for fencing activities, (3) was a big drug area, and (4) the vehicle matched the description of a car seen in the vicinity of several burglaries. (They had been told by uniformed police officers that an older model Ford stationwagon, about a 1960 in poor condition, had been seen near several burglaries.)

Detectives Gomez and Lowe followed the car a little less than one mile to the parking lot of the Whataburger Restaurant at the corner of Stone and Speedway. Upon entering the parking lot the detectives saw the stationwagon stop and defendant Radabaugh, who was sitting in the passenger seat, ran up to a Chevrolet vehicle, which was about to leave the parking lot. The detectives parked their car and got out to investigate the activity. As they approached the stationwagon, they recognized the black male in the rear seat as Ben Alexander, a known narcotics dealer and user. Detective Lowe stopped at the stationwagon to investigate, and Detective Gomez proceeded to the Chevrolet, towards which Radabaugh had run.

When Gomez approached Miss Radabaugh, he identified himself with his badge and I.D. card. He then requested some identification and informed her that he was investigating her conduct. Miss Radabaugh asked if she were under arrest, to which Gomez responded, "No, merely investigation." She then requested to return to the Ford stationwagon and Gomez informed her that she was not restricted to the Chevrolet.

Miss Radabaugh returned to the stationwagon and sat down on the right front seat. Gomez described Miss Radabaugh as being extremely nervous, shaking, stuttering, fidgeting with her hands and perspiring profusely. Through the open, right front door he saw her take in her left hand a small, yellow, folded paper, the type commonly used in dispensing narcotics, and place it underneath a makeshift seat cover where she was sitting. When she got up, part of it was exposed. After she got up, Lowe also saw the paper where she had placed her hand a few seconds before. The detectives subsequently seized the paper.

Miss Osborn, whom Detective Lowe had asked for identification, was sitting in the driver's seat of the stationwagon. Through the open, right, front door, Gomez saw Miss Osborn inserting a yellow folded paper between her legs. Her pants were unzipped and she was inserting the paper into her vagina. Gomez walked around the car and approached Miss Osborn from the driver's side. He advised her of her constitutional rights and that he was going to take her to the police station to be searched by a female. She then unzipped her pants and withdrew the paper from her vagina.

Both papers seized by the detectives contained heroin. On appeal, the State contends that the trial court erred in suppressing this evidence. We agree.

◾ As we stated in State v. Baltier, 17 Ariz.App. 441, 498 P.2d 515 (1972), to jus-

---

1. Detective Lowe identified the car as a 1959 Ford stationwagon.

tify a forced stop for interrogation or investigative purposes:

"There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime." 17 Ariz.App. at 448, 498 P.2d 522.

Although this test is less than probable cause to arrest, it protects the individual citizen's Fourth Amendment rights while at the same time allows valid field investigation.

Considering the following circumstances, we believe that Detectives Gomez and Lowe were justified in stopping the defendants for interrogation. They had observed a vehicle matching the description of a vehicle seen in the vicinity of several burglaries, which was being driven by two white females in a predominately black neighborhood known for its drug and "fencing" activities. They also observed defendant Radabaugh running to another vehicle. Furthermore, prior to the stop by the detectives, the black passenger was identified as a known narcotics dealer and user.

Since the stop for investigative purposes was justified, our next consideration is whether the seizure of the heroin was justified. In this case, as in State v. Forteson, 11 Ariz.App. 275, 464 P.2d 346 (1970), there was no search. The packets of heroin were in the plain view of Detective Gomez while he was interrogating the defendants. Consequently, they were subject to seizure and may be introduced in evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

For the reasons herein stated, the order granting the defendants' motion to suppress is vacated and the case remanded for further proceedings not inconsistent herewith.

HATHAWAY, C. J., and HOWARD, J., concur.